1              IN THE UNITED STATES DISTRICT COURT

2              FOR THE MIDDLE DISTRICT OF ALABAMA

3                       EASTERN DIVISION

4

5    UNITED STATES OF AMERICA

6         vs.                    CASE NO.:  3:10cr14-WKW

7    FRANCISCO RODRIGUEZ,

8              Defendant.

9

10                     * * * * * * * * * *

11                     SENTENCING PROCEEDINGS

12                     * * * * * * * * * *

13            BEFORE THE HONORABLE W. KEITH WATKINS, UNITED STATES

14   DISTRICT JUDGE, at Montgomery, Alabama, on Wednesday, October 6,

15   2010, commencing at 1:45 p.m.

16   APPEARANCES:

17   FOR THE GOVERNMENT:      Ms. Susan R. Redmond

18                           Assistant United States Attorney
                             OFFICE OF THE UNITED STATES ATTORNEY

19                           131 Clayton Street
                             Montgomery, Alabama  36104

20
     FOR THE DEFENDANT:      Mr. Russell Turner Duraski

21                           Attorney at Law
                             6332 Woodmere Boulevard

22                           Montgomery, Alabama  36117

23   ALSO PRESENT:           Mr. Rafale Carrillo, Interpreter
     (via telephone)

24
                   Proceedings reported stenographically;

25                   transcript produced by computer.

```
 1        (The following proceedings were heard before the Honorable

 2         W. Keith Watkins, United States District Judge, at

 3         Montgomery, Alabama, on Wednesday, October 6, 2010,

 4         commencing at 1:45 p.m.:)

 5     (Call to Order of the Court)

 6          THE COURT:  All right.  We're here today for sentencing

 7     in a multi-defendant case.  And the first defendant to be

 8     sentenced will be Francisco Rodriguez.

 9          And I believe we have an interpreter on the phone,

10     Mr. Carrillo; is that correct?

11          THE INTERPRETER:  Yes, Your Honor.  That is correct.

12          THE COURT:  Thank you for joining us today.  If you

13     would, raise your right hand and be sworn by my courtroom

14     deputy.

15          THE INTERPRETER:  Yes, Your Honor.

16     (The interpreter is sworn)

17     (All responses by the defendant are through the interpreter)

18          THE CLERK:  Thank you.

19          THE COURT:  Okay.  We will take appearances in

20     10cr14-2, Francisco Rodriguez.  For the government, please?

21          MS. REDMOND:  Good afternoon, Your Honor.  For the

22     United States, Susan Redmond, Assistant United States Attorney.

23     Seated at counsel table with me as an observer is AUSA Monica

24     Stump.  Also present for the government is DEA Agent Tom Halasz.

25          THE COURT:  Thank you.  Good afternoon to you-all.
```

1          And for the defendant?

2          MR. DURASKI:  Good afternoon, Your Honor.  Russell

3    Duraski for Mr. Rodriguez.  And this is my client, Francisco

4    Rodriguez.

5          Your Honor, if I may, since Mr. Rodriguez is wearing a

6    headset to hear the interpreter, may we remain at counsel table?

7          THE COURT:  That's approved.  That will be fine.  Good

8    afternoon to both of you.

9          THE DEFENDANT:  Good afternoon.

10         THE COURT:  I understand that there is an 11(c)(1)(C)

11   plea agreement in this case.  Would the government please state

12   the terms.

13         MS. REDMOND:  Yes, Your Honor.  And this is filed as

14   document 120 for the record.  The parties, Your Honor, agreed in

15   terms of the government's provisions that the government, in

16   exchange for the defendant's plea of guilty to offense -- count

17   one of the offenses charged, we agreed that a two-level

18   reduction pursuant to 3E1.1(a) for acceptance of responsibility

19   should be given by the Court.  We agreed to file for an

20   additional third point or level off pursuant to 3E1.1(b) if the

21   defendant continued to accept responsibility.  We agreed that if

22   the defendant completed his obligations contained within the

23   cooperation agreement, we would move at sentencing for a

24   downward departure pursuant to sentencing guideline 5K1.1 and

25   Title 18 of the United States Code, Section 3553(e).  We also

1   made allowance for a Rule 35 postsentencing.

2          The defendant, Your Honor, agreed to plead guilty --

3   excuse me -- to counts one and two of the indictment and to

4   cooperate with the government.  The defendant also waived appeal

5   and collateral attack to include a 2255 motion.  I believe that

6   is the gist of the -- or the salient points of the plea

7   agreement.

8          THE COURT:  Has the defendant complied with the terms

9   of the plea agreement?

10          MS. REDMOND:  Yes, Your Honor.

11          THE COURT:  All right.  Mr. Duraski, did the government

12   accurately state the terms of the plea agreement?

13          MR. DURASKI:  They did, Your Honor.  I would just point

14   out for the record I believe the plea agreement that has been

15   submitted to the Court reflected Mr. David Clark as counsel at

16   that time, and he was.  A conflict developed, so he withdrew,

17   and I am now counsel of record for Mr. Rodriguez, though I

18   wasn't at the time the plea agreement was entered into.

19          THE COURT:  All right.  Has the government complied

20   with the terms of the plea agreement?

21          MR. DURASKI:  They have, Your Honor.

22          THE COURT:  All right.

23          MS. REDMOND:  Judge, if I may, I'm sorry.  With one

24   exception, and we intend to rectify that.  Mistakenly, Your

25   Honor, I thought I had filed in this case the motion for the

1    third point.  In reviewing the record, I see that I have not.

2    At this time, the government moves for a one-level decrease in

3    the defendant's guideline level pursuant to 3E1.1(b) for his

4    acceptance of responsibility.

5            THE COURT:  All right.  That motion is granted.  The

6    Court has considered the plea agreement, considers it to be

7    reasonable, and accepts the plea agreement.

8            Mr. Duraski, have you and your client had an

9    opportunity to review the presentence report?

10           MR. DURASKI:  We have, Your Honor.

11           THE COURT:  Are there objections?

12           MR. DURASKI:  Your Honor, there was one objection

13   remaining, and that was related to the gun enhancement, the

14   two-level enhancement related to the -- the weapon enhancement

15   being applied to Mr. Rodriguez.

16           THE COURT:  And as it applied to Mr. Rodriguez?

17           MR. DURASKI:  That's correct, Your Honor.  There was

18   a -- there were two levels added into the offense level for the

19   existence of a weapon that was in a codefendant's possession.

20   And we have objected to that two-level increase being applied to

21   Mr. Rodriguez.

22           THE COURT:  I see -- the terms of your written

23   objection say that this refers to the .38-caliber Derringer

24   pistol recovered from Mr. Crowell during the search of the

25   defendant at his place of business where marijuana was

1   packaged.   The defendant states there is no evidence at this

2   point to suggest that a gun enhancement would apply to him;

3   therefore, the offense level should remain at 28.   Do you have

4   any argument to make on that?

5          MR. DURASKI:   Well, Judge, to be quite frank with you,

6   the government submitted a sentencing memorandum.   In page 3 of

7   their sentencing memorandum, they pretty much lay out the facts

8   that I'm relying on.   The government says it this way.   Has no

9   information or evidence to present to the Court that any

10  codefendant was aware of the firearm, that firearms had ever

11  been used or possessed at any other time during the conspiracy.

12         I can't deny the existence of the weapon on

13  Mr. Crowell.   Mr. Crowell's explanation for it, as I understand

14  from his statements, was that he carried that gun irrespective

15  of any drug dealing.   It was related to safety at his -- at his

16  legitimate place of business.   And there's never been any

17  indication that Mr. Rodriguez, Francisco Rodriguez, was aware of

18  that gun, that he --

19         THE COURT:   It's not the law that he had to be aware of

20  it.

21         MR. DURASKI:   I understand that, Your Honor.   But I

22  think the gun has got to be linked in some way to the illegal

23  transactions that were taking place that Mr. Rodriguez was

24  involved in.   And the government's own admission is they can't

25  link that gun to this illegal transaction.

1        And as far as I know, there was no other -- there's no

2    prohibition against Mr. Crowell possessing a gun for any other

3    reason.  I'm not aware that he was a felon so he couldn't be

4    possession in a gun.  Not aware that the gun was used in any

5    other crime.  Mr. Crowell says that I had that gun for purposes

6    unrelated to the criminal activity.  And the government has no

7    evidence to link Mr. Crowell's weapon to the activity other than

8    its mere presence.  And my argument is that's insufficient basis

9    to then attach that enhancement to Mr. Rodriguez because there

10   was no -- there's absolutely nothing that links him to the gun

11   or the gun to the activity that he's admitted to being a part

12   of.

13        THE COURT:  Okay.  Government, I've read your

14   sentencing memorandum.  And in the last line on paragraph

15   three -- you do state what Mr. Duraski says prior to that; but

16   on the last line, you said that the government does, however,

17   agree the plain reading of the guidelines requires only that a

18   weapon is possessed during illegal trafficking conduct to

19   warrant the enhancement.  So is it the government's position

20   this enhancement does or does not apply in this case?

21        MS. REDMOND:  Judge, I think based on my reading of the

22   case law underlying this issue in the Eleventh Circuit, it seems

23   that there's a three-part test that needs to be applied.  And if

24   I could, I am actually going to cite from the *Federal Sentencing*

25   *Guidelines Handbook, Text and Analysis*, 2009-2010 edition, at

1   page 562 regarding coconspirator's firearm where it talks about

2   there is some dispute about the appropriate test for deciding

3   whether a defendant's sentence should be enhanced for a

4   coconspirator's possession of a weapon.  It specifically says as

5   to the Eleventh Circuit, Judge, However, the Eleventh Circuit

6   has adopted a three-part test for deciding when the enhancement

7   is appropriate, permitting the enhancement if, one, the

8   possessor is charged as a coconspirator -- in this case,

9   Mr. Crowell has been in fact charged as a coconspirator and has

10  pled guilty as a coconspirator -- the coconspirator is found to

11  have possessed the firearm in furtherance of the conspiracy, and

12  three, the defendant was a member of the conspiracy at the time

13  of the possession of the firearm.

14        I think the issue surrounds that second element,

15  whether the coconspirator in this case, Mr. Crowell, was found

16  to have possessed the firearm in furtherance of the conspiracy.

17  And we have no evidence to support that he possessed the firearm

18  in furtherance of the conspiracy but the argument that he had it

19  in terms of protection while he was engaged in the activity.

20        I will tell the Court that I was before Judge Thompson

21  in a similar case with multi-defendants involving cocaine

22  trafficking and a gun was intentionally possessed, and it was

23  proven in furtherance of the drug conspiracy, and he held the

24  coconspirators liable.  I simply don't believe I have sufficient

25  evidence to put before the Court that other than his own

1   protection in engaging in the criminal activity, Mr. Crowell had

2   use of the gun.

3          THE COURT:  What about the fact that Mr. Crowell was

4   unloading marijuana with the gun in his pocket with this

5   defendant?

6          MS. REDMOND:  And that is -- I would agree with that

7   set of facts.  The question is did he have the gun, at least in

8   my reading of the test --

9          THE COURT:  It's in furtherance of the conspiracy.

10  He's unloading marijuana with a gun in his pocket.

11         MS. REDMOND:  I would agree.

12         THE COURT:  That's in furtherance of the conspiracy.

13         MS. REDMOND:  I would agree.

14         THE COURT:  Unloading marijuana is in furtherance of

15  the conspiracy.  He has a weapon on him.  And the law -- I

16  understand *United States versus Hall* to say that if the firearm

17  is present at the location of the criminal conduct, the burden

18  then shifts to the defense to prove that the connection between

19  the firearm and the offense is clearly improbable.  So isn't

20  this the defendant's burden?

21         MS. REDMOND:  I would agree.  And I would never -- and

22  I could not say that it is clearly improbable, and I would not

23  make such argument.  I think that in fact Mr. Crowell had it to

24  protect himself while he is engaged in the activity.

25         THE COURT:  All right.  Mr. Duraski, what evidence do

1  you have that -- or what argument do you have supported by

2  evidence that it was clearly improbable by a preponderance of

3  the evidence that this firearm was used in furtherance of the

4  conspiracy?

5        MR. DURASKI:  Judge, I'm kind of in a Catch-22.  I

6  don't have any evidence because I'm trying to prove a negative.

7  I mean there is no evidence to support that it was in

8  furtherance of the conspiracy.  I think the statement of the law

9  in the last sentence that you cited is -- is incorrect.  It

10  takes more than mere possession.  It takes possession in

11  furtherance of the conspiracy.  So I'm put in the position of

12  trying to prove something contrary to what Mr. Crowell himself

13  said.

14        And that's the only evidence we have is what

15  Mr. Crowell said the possession of the weapon was for.  And he

16  said that his business was located somewhere that he was at --

17  his legitimate business -- where he routinely was at late at

18  night and that he possessed that weapon to protect himself and

19  watch out for himself, irrespective of any criminal activity.

20  So there -- I can't disprove that link.  That's all I know about

21  the gun, is what Mr. Crowell has said about the gun and the fact

22  that my client didn't know about the gun, that the gun wasn't

23  used overtly, at least, in furtherance of the conspiracy.

24        And the Eleventh Circuit has said you've got to go

25  beyond mere presence.  You've got to show that he did something

1    in furtherance of the conspiracy.  And there's no evidence of

2    that.  And that's -- the lack of evidence is the basis for my

3    argument.

4         THE COURT:  I don't know where the gap would be between

5    having it in your pocket while you're unloading a truckload of

6    marijuana with your defendant sweating there over those bales

7    like I used to sweat over bales of hay and pointing a gun at

8    somebody to defend the marijuana.  I don't know what you're

9    saying there would have to be.  Would there have to be some kind

10   of an agreement, by your theory, that everybody in the

11   conspiracy knows that Mr. Crowell has a gun in his pocket in

12   case somebody shows up?  I mean he's unloading the marijuana,

13   he's got a gun in his pocket, and he's unloading it with your

14   defendant.

15        MR. DURASKI:  I understand that, Your Honor.  I

16   can't --

17        THE COURT:  That's in furtherance of the conspiracy, as

18   far as I can tell.

19        MR. DURASKI:  Well, but my argument is simply, again,

20   based on the information that we've been provided that is

21   undisputed as to what the gun's presence was.  And that's -- the

22   undisputed statement of Mr. Crowell is that he had it for

23   purposes other than the conspiracy.  And that's all -- that's

24   all I can offer the Court.

25        THE COURT:  All right.  And I'd also point out for the

1  record that this was not the first time Mr. Crowell's business

2  had been used for this purpose.  Part of his illegal business

3  activities was his premises being used to unload marijuana.

4          MS. REDMOND:  That is a correct statement, Your Honor.

5          THE COURT:  All right.  I find that the enhancement

6  does apply.  I find by a preponderance of the evidence that it

7  is not clearly improbable that the gun was not used in the

8  furtherance of a conspiracy.  And I understand that to be, under

9  *United States versus Hall,* the defendant's burden to prove.  So

10 the objection is overruled, but your objection is noted.

11         MR. DURASKI:  Thank you, Your Honor.

12         THE COURT:  Are there any other objections?

13         MR. DURASKI:  Nothing else, Your Honor.

14         THE COURT:  All right.  The government has a pending

15 motion, doc number 168, for a downward departure of two levels.

16 And in your sentencing memorandum, you have taken a position

17 that Mr. Rodriguez-Palma and Mr. Rodriguez, who -- do I

18 understand they're brothers?

19         MS. REDMOND:  That is correct, Your Honor.

20         MR. DURASKI:  Yes, sir.

21         THE COURT:  Had minimal roles in the offense and had

22 only participated in two to three off-loads.

23         MS. REDMOND:  That is correct, Judge.  And to be more

24 specific, their job was solely -- and they were brought up from

25 Texas solely for the purpose of unloading the truckload of

1  marijuana.

2          THE COURT:  Now, Mr. Blake.

3          PROBATION OFFICER TOLBERT:  Yes, Your Honor.

4          THE COURT:  Did -- I didn't see any adjustment on

5  Mr. -- well, first of all, I didn't see any objection about it.

6  But secondly, I didn't see any adjustment for minimal or minor

7  role for this defendant.

8          PROBATION OFFICER TOLBERT:  No, Your Honor.  I

9  didn't -- didn't believe that adjustment would apply being

10 that -- I didn't feel the adjustment would apply for a minimal

11 role being that he was -- he was found to be driving one of

12 the -- one of the escort vehicles with the drug shipment from

13 Houston.

14         THE COURT:  Okay.  But you did apply it to his brother,

15 who I assume is -- was not driving a vehicle.

16         PROBATION OFFICER TOLBERT:  I -- I did not do the

17 report on the -- on the other individual.

18         THE COURT:  Oh, Ms. Johnson.  Ms. Johnson.

19         PROBATION OFFICER JOHNSON:  Yes, sir.  I did apply it

20 to Pedro Rodriguez-Palma.

21         THE COURT:  He was not driving the vehicle?

22         PROBATION OFFICER JOHNSON:  He was not driving.

23         THE COURT:  So that's the distinction between these two

24 defendants, is one was actually driving a vehicle, a chase

25 vehicle.

1          PROBATION OFFICER TOLBERT:  Yes, Your Honor.

2          THE COURT:  Okay.  Well, I don't have an objection

3 before me at any rate on that, and I understand the distinction

4 that Probation has made, and I probably agree with it.  I did

5 make a note here that this defendant, Francisco, was driving a

6 black Infiniti.

7          MR. DURASKI:  Your Honor, if I may just interject at

8 this point.  There was some discussion about that.  I just -- I

9 didn't want to file an objection that I didn't think I really

10 had too much of a great argument for.  I felt like I had a

11 better shot at the gun, quite frankly, no pun intended.

12          THE COURT:  A better shot with the gun?

13          MR. DURASKI:  Yeah.  I realized that as soon as that

14 came out of my mouth.

15          MS. REDMOND:  And Judge, we certainly have no objection

16 to the presentence report in its entirety.  I simply wanted to

17 give the Court an understanding of the players and their basic

18 roles.

19          THE COURT:  Okay.  I believe, Ms. Johnson, we have

20 fewer -- less drugs attributed to Pedro than we do to Francisco

21 as well.  Is that true?

22          PROBATION OFFICER JOHNSON:  One second, Your Honor.

23 Let me see.  For Pedro Rodriguez-Palma, I've got drug amounts of

24 1,728 pounds; and for Francisco Rodriguez, I have 5,184 pounds.

25 So yes, sir, there's less.

1          THE COURT:  All right.  That would also support the

2    distinction as to roles.

3          Now, let's get back to your document number 186, the

4    motion for downward departure.  Is there evidence that the

5    government needs to put on in support of that motion?

6          MS. REDMOND:  Judge, we -- yes.  And it doesn't need to

7    be -- we don't need a closed courtroom for it at all.

8          THE COURT:  Okay.  Go ahead.  We only have officers of

9    the Court and the DEA agent in here, so go ahead.

10      (This portion of the transcript has been filed under seal

11       pursuant to the Court's oral order)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3        THE COURT:  Okay.  The motion will be granted in two

4   levels.

5        Having dealt with all the motions and the objection, in

6   compliance with Justice Breyer's majority opinion in *Booker*,

7   this Court, while not bound to apply the guidelines, has

8   consulted them and has taken them into account on the issue of

9   the appropriate range of sentence to be imposed in this case.

10       The Court adopts the factual statements contained in

11  the presentence report with specific findings that prior to the

12  government's motion for downward departure, the offense level is

13  31, the criminal history category is III, the guideline range is

14  from 135 to 168 months, the supervised release period is not

15  less than four years, and the fine range is from 15,000 to $4

16  million.  Furthermore, because the Court has granted the

17  government's motion for downward departure, the Court finds that

18  the offense level is 29, the criminal history category is III,

19  the guideline range is from 108 to 135 months, the supervised

20  release period continues to be not less than four years.

21       Is that correct?

22       PROBATION OFFICER TOLBERT:  That's correct, Your Honor.

23       THE COURT:  And the fine range remains at 15,000 to

24  four million?

25       PROBATION OFFICER TOLBERT:  That's correct, Your Honor.

```
 1          THE COURT:  All right.  Does the defendant dispute
 2  these calculations?
 3          MR. DURASKI:  We do not, Your Honor.
 4          THE COURT:  Does the government?
 5          MS. REDMOND:  No, Your Honor.
 6          THE COURT:  All right.  Mr. Duraski, do either you or
 7  your client have anything to say in mitigation or otherwise
 8  before the Court pronounces sentence in this case?
 9          MR. DURASKI:  Your Honor, if I may, and I discussed
10  this with Ms. Redmond before I broached this matter with the
11  Court.  Many times that I've been before Your Honor or in this
12  courthouse, defendants stand before the Court and they talk
13  about family back home.  I have with me today some photographs
14  of Mr. Rodriguez and his family and some letters.  We would
15  rather not make these part of the court record.  We don't really
16  want -- but we would like the opportunity to present these to
17  the deputy clerk so the Court can take a look at them and just
18  see that these folks really exist.  There really is a family
19  back home.  They really are concerned about him and writing
20  letters.  Simply for the Court's information and consideration
21  in determining a sentence for the defendant in this case.
22          I've shown these to Ms. Redmond.  And I won't speak for
23  the government, but I think they have no objection to me
24  approaching and just asking the Court to take a look at this, if
25  I may.
```

1          THE COURT:  Any objection?

2          MS. REDMOND:  No objection.

3          THE COURT:  All right.  Approach.

4      (Brief pause)

5          MR. DURASKI:  While Your Honor is looking at those, if

6   I may, I have actually spoken to the wife back in Houston,

7   Texas.  She is unable to be here today, just financially cannot

8   travel here.  But I have spoken to her and actually confirmed --

9   and I represent as an officer of the Court that I've confirmed

10  her existence at least through a telephone conversation.

11     (Brief pause)

12         THE COURT:  Okay.  Go ahead, Mr. Duraski.  Anything

13  else?

14         MR. DURASKI:  Your Honor, I would just like to -- I'll

15  retrieve those, if I may.

16         Your Honor, I would also like to add on Mr. Rodriguez's

17  behalf that while he has admitted his involvement in this

18  activity, I do think that Mr. Rodriguez's role was more that

19  of -- as a transport.  He was not somebody that was making

20  decisions and somebody that was making substantial financial

21  gain out of this matter.  He made poor choices and he made --

22  has admitted those choices to the Court.

23         And I'd also like to say that as -- in representing

24  Mr. Rodriguez, I came into this matter after he had already pled

25  guilty and he had had some meetings with the government.  He was

1    still, I think, at that point in time struggling some with trust

2    issues in regard to his cooperation and other matters related to

3    this.   I think in the time that I've been representing

4    Mr. Rodriguez, he has become more open in regard to his role and

5    I think especially in our last meeting with certain agents was

6    very forthcoming in his role and provided what I think will be

7    helpful ongoing information for the government in investigating

8    these activities.   And I'd ask the Court to take that into

9    consideration in determining his sentence pursuant to the

10   guideline range, that I have seen what I think is, you know, a

11   change of heart and an understanding on Mr. Rodriguez's part and

12   on his behalf asking the Court to consider a sentence at the low

13   end of the guideline range.

14        MS. REDMOND:   Judge, the only other information --

15   excuse me -- that I believe the Court should be aware of is

16   information and belief that Mr. Rodriguez is subject to

17   deportation at the conclusion of his sentence.

18        THE COURT:   All right.   Does the defendant have

19   anything to say?

20      (The defendant speaks in Spanish)

21        THE COURT:   I'm not hearing the interpreter.

22        THE DEFENDANT:   (Through the interpreter)  Well, I ask

23   you to forgive me for the wrong that I did to this country.   I

24   lived half of my life in this country, and now I committed a

25   huge mistake.   I don't even know how to ask for your

1    forgiveness.  I beg for your forgiveness.  Like I said, I spent

2    half my life in this country, and now this huge mistake.

3    Forgive me.

4         THE COURT:  Okay.  Thank you, Mr. Rodriguez.

5         The sentence will now be stated but you will have a

6    final chance to make legal objections before the sentence is

7    imposed.  Mr. Rodriguez, I am bothered by the amount of and

8    number of -- the amount of drugs involved here and the number of

9    occasions they were brought here.  This was an extensive

10   conspiracy with large amounts of illegal drugs.  And certainly

11   if I were here undocumented, I wouldn't be involved in that kind

12   of illegal activity.  You have some significant criminal

13   history.  You're a category III.  And I have determined that a

14   sentence in the middle of the guideline range is appropriate.

15        So having considered the sentencing guidelines and

16   evaluated the reasonableness of a sentence through the lens of

17   Section 3553, it is the judgment of the Court that you are

18   hereby committed to the custody of the Federal Bureau of Prisons

19   to be imprisoned for a total term of 120 months.

20        Having considered the guideline computations and having

21   taken them under advisement, the Court finds that the sentence

22   imposed is sufficient but not greater than necessary to comply

23   with the statutory purposes of sentencing.  Furthermore, I find

24   that it is reasonable when considering the nature and

25   circumstances of the offense and your history and

1  characteristics, to reflect the seriousness of the offense, and

2  to promote respect for our law and to provide just punishment

3  for the offense and to avoid unwarranted sentence disparities

4  among defendants.

5       The Court does recommend that you be designated to a

6  facility where intensive drug treatment is available.  Upon

7  release from imprisonment, you shall be placed on supervised

8  release for a term of four years.  This consists of four years

9  on count one and four years on count two, all such terms to run

10  concurrently.  As well -- in that same vein, your sentence is a

11  concurrent sentence of 120 months as to count one and 120 months

12  as to count two to run concurrently.

13       PROBATION OFFICER TOLBERT:  Yes, Your Honor.

14       THE COURT:  Within 72 hours of release from custody,

15  you shall report to the probation office in the district to

16  which you are released.  While on supervised release, you shall

17  comply with the mandatory and standard conditions of supervised

18  release on file with this Court.

19       I also order the following special conditions.  You

20  shall participate in a program of drug testing administered by

21  the probation office for substance abuse, which may include

22  testing to determine whether you have reverted to the use of

23  drugs.  You shall contribute to the cost of any treatment based

24  on ability to pay and the availability of third-party payments.

25  You shall submit to a search of your person, residence, or

1   vehicle pursuant to the search policy of this Court.

2          In light of your illegal status, upon completion of the

3   term of imprisonment, you shall be remanded to the custody of

4   the Bureau of Immigration and Customs Enforcement for

5   deportation proceedings in accordance with the Immigration and

6   Nationality Act.  If deported, the term of supervision shall be

7   nonreporting while you live outside the United States.  You

8   shall not illegally reenter the United States.  And if you

9   should reenter the United States during your term of supervised

10  release, you shall report to the nearest United States Probation

11  Office within 72 hours of arrival.

12         You shall pay to the United States District Court Clerk

13  a special assessment fee of $200, which is due immediately.

14  Based on your inability to pay, the Court waives the imposition

15  of a fine, and the Court finds there is no identifiable victim

16  who incurred a financial loss.

17         Now, are there any objections to the sentence or to the

18  manner in which the Court pronounced it?  First from the

19  government.

20         MS. REDMOND:  No, Your Honor.

21         THE COURT:  From the defendant?

22         MR. DURASKI:  No, sir, Your Honor.

23         THE COURT:  All right.  The sentence is ordered imposed

24  as stated.

25         Pursuant to the plea agreement, you have the right --

1   you have waived most of your appeal rights, but you retained the

2   right to appeal within 14 days under certain very limited

3   circumstances, as set out in your plea agreement.  If you cannot

4   afford the cost of an appeal, you have the right to apply for

5   leave to appeal *in forma pauperis*.  In other words, you may

6   apply to proceed with your appeal at no cost to you.

7              Is there anything else from the government?

8              MS. REDMOND:  Judge, I believe the only other issue --

9   actually, I don't think there is anything else.  I think all

10  counts are taken care of and there was no forfeiture allegation

11  against the defendant.  The government is satisfied.

12             THE COURT:  As to this defendant.  Yes, ma'am.

13             And sir, from the defendant?

14             MR. DURASKI:  No, sir, Your Honor.

15             THE COURT:  Okay.  Well, the sentence is ordered

16  imposed as stated.

17             Mr. Rodriguez, I wish the best for you.  You are

18  remanded to the custody of the United States Marshal.

19       (Proceedings concluded at 2:18 p.m.)

20                   * * * * * * * * * *

21

22

23

24

25

1                COURT REPORTER'S CERTIFICATE

2          I certify that the foregoing is a correct transcript

3   from the record of proceedings in the above-entitled matter.

4          This 13th day of January, 2011.

5

6                                   /s/ Risa L. Entrekin
                                    Registered Diplomate Reporter
7                                   Certified Realtime Reporter
                                    Official Court Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25